Good morning, Your Honor. My name is Jonathan Shapiro, and I represent the appellant Ernesto Monell, who was convicted below of being a felon in possession of a firearm and possession of crack cocaine with intent to distribute. The main issue I want to address this morning is the invalidity under the Fourth Amendment of the search warrant, which authorized the search of Mr. Monell's alleged apartment in Fall River and upon which his conviction is entirely based. The affidavit in support of the search warrant in this case makes it clear that the crime under investigation by Fall River Detective William Philanders was the illegal possession of firearms. As the affidavit in support of the warrant, as the affiant, Detective Philanders states that he received information from an informant, which he identifies as CI1, regarding the illegal possession of firearms by a person the informant knew only as Ness. Philanders goes on to state that on the basis of the information, he started an investigation into the crime of illegal possession of firearms at that address. And on the basis of the information provided by CI1 and another CI known as CI2, he concluded that he believed that firearms are being stored in apartment number four. That was his sole conclusion. As a result, he requested a warrant be issued to search for any and all illegally possessed assault weapons, machine guns, firearms, shotguns, ammunition, and related items. And the warrant issued for the search of these allegedly illegally possessed weapons. Let me ask you this. If we look at the facts in the warrant, weren't they sufficient to lay out probable cause to believe that your client had committed assault with a gun? And that evidence of that assault might well be found in his apartment. So that had the affidavit referred to that as the crime, it would have been fine. Well, that is the position the government takes here. And what's what's wrong with that analysis? What's wrong is... But just factually, do you agree or disagree with the government's contention that the facts in the affidavit made out probable cause to believe that evidence of the illegal use of a firearm, assault with a firearm, would be found? As we make clear in our brief, we disagree completely that there was probable cause to make out a case either for illegal possession of firearms or for the illegal use of firearms in the commission of the alleged assault crime. And what's the basis of your letter? The basis is that when you look at the affidavits based solely on informant information, there are a number of factors that the court considered. One is the veracity of the informant. So what you're telling us is that the facts themselves are okay, except their source isn't sufficiently credible to make it probable cause? We think that the source, the veracity of the informant, is not established one bit in the warrant. But going to the facts, the facts do not establish probable cause for a number of reasons. Mainly that with respect to the facts relating to the criminal conduct or alleged criminal conduct, the affiant provides virtually no firsthand knowledge. All of the information relating to the alleged criminal conduct involving the use of firearms has no source whatsoever. The affiant merely states that the informant has information that at some unknown time, at some unknown place, that Ness assaulted somebody with a firearm. Period. Doesn't say when it happened. Doesn't identify the firearm that was allegedly used. This could have been two years in the past as far as what the affiant says the informant told him. So with respect to that allegation, there's absolutely, and it's clear, I would say, that the warrant indicates that there was no firsthand knowledge, and this could be no more than a rumor. With respect to other allegations that the informant allegedly provided, he says that he has information that Mr. Monel, or the person he knew as Ness, was a member of the Blood Street Gang. Again, no source for that information. No indication why or how he came to know it. Was he a member? Did he observe Ness wearing gang colors at a gang meeting? No source, no detail, no indication that that was based on firsthand knowledge. What about the statement that CI2 actually himself saw Ness point a firearm at an individual within the last week in the area of 696 North Main Street? If you look at CI2, number one, the affiant had no relationship with CI2. The affiant says that some police officer told him that CI2 had told him or provided this information to him. So there is absolutely no basis for any conclusion whatsoever that CI2 was truthful or reliable. So with respect to that prong or that criterion, there is no basis for crediting anything that CI2 said. When you say no basis, are you excluding the possibility that when you get two sources of information that are consistent from two different confidential informants, that each of them corroborate each other? Well, in this case, it's clear that there was no consistent information from the two informants. CI1 says that at some unknown time, at some unknown place, Ness struck an individual with a firearm. And CI2 says within a week in the area, he saw Ness point a firearm at some person. Again, that's not consistent. That doesn't corroborate each other. In fact, it indicates that there were two different incidents at two different times. And there's no basis to infer any type of support from CI2's statement, even if you credited the fact that there was any veracity to it, which, as I've indicated, you can't. So there's no corroboration. The details with respect to the information have absolutely no firsthand basis, don't indicate that either that the informants were present, or indeed that the activities were even crimes. Because the circumstances of the pointing, for example, don't rule out the fact that it was self-defense, that it was a joke, that the alleged victim didn't even or wasn't even aware of the fact that a firearm had been pointed at him. But suppose, hypothetically, we were to disagree with you on that aspect of the case and on the reliability argument. Is the inconsistency in the warrant sufficient to doom it? It says in one place that it was an investigation of firearms intended for use in committing a crime, and yet the description of the property to be seized talks about illegally possessed. Does that doom the warrant, that inconsistency? Yes. Specifically, it violates the particularity of a requirement of the Fourth Amendment, because there is no nexus between the alleged probable cause for the crime and the items sought to be searched. In effect, in this case, accepting that there may be any basis, which of course I disagree, with respect to illegal use of a firearm, there is no basis for concluding on the basis of that that there is a nexus to the illegal possession of firearms. So here, as in the case that this court recently decided, Cordero-Rosario, there is an investigation in Cordero-Rosario for lewd and lascivious conduct under Puerto Rico law, but a warrant was issued for the investigation of possession of pornography. And this court not only said that that warrant was invalid, but it went further and said because of the errors of the affiant in that case, who was also the executor of the warrant, there is no even any good faith exception to the rule. So in that case, the court excluded or held that the evidence should have been suppressed. So couldn't an officer in good faith here conclude that if the firearms were illegally used, they're likely to have been illegally possessed? The court below considered and rejected that argument. He indicated that that would require speculation, although it's possible that that would be the case. It wouldn't require speculation as to whether or not that were the case. He went so far as to say that if any alleged illegal use could authorize a, essentially a general warrant for illegal weapons, that would open the doors to all kinds of unjustified searches. So if you stick with Judge Doug's hypothetical, though, and we put to one side, let's assume, and we understand you're arguing the contrary, assume the CIs are reliable and assume that we have probable cause laid out to search for evidence pertinent to the illegal use of a firearm and threatening with a firearm, then doesn't it follow that the defect in the warrant here is actually that it's too narrow? In other words, a proper warrant would have sought for any evidence of the use of a firearm, including any possession of a firearm, whether illegal or not, and instead the actual warrant only authorized the search for illegal possession. So it was too narrow. Well, you could look at it as too narrow, but you could also look at it as too broad. Well, but how would, how, how was it, how did it authorize a search for anything with respect to firearms that a warrant issued towards the use of the firearm as the crime would not have authorized? Because I would think any evidence that there was a gun in the apartment would be relevant to the illegal use charge. Well, one of the problems, of course, is that the affiant and the informant that provided information gave no information as the type of weapon that was allegedly used in each of these incidents. All they said is that the informant has information that a gun was either pointed or was used to strike somebody. It doesn't say it was a rifle. It doesn't say it was a handgun. There's no description whatsoever. And although a warrant which said, for example, if the weapon had been identified in these alleged illegal use cases was a handgun, that could have been the subject of the warrant. Yeah, but that point has nothing to do with your initial point, which is the illegal possession. And the fact remains that a warrant to seize guns is broader than the warrant that issued here, which was a warrant to seize illegally possessed weapons. That's the point. Now, I understand you've got an argument that there may not be enough here to authorize the warrant to search for firearms that may have been involved in the crime that the first informant reported. But I don't understand how you can say that this warrant is more general, when it seems to me that it's more narrow. Well, I think it's more general. For one thing, a warrant to search for alleged illegally possessed weapons essentially is a warrant to search for weapons. Because there's no basis for police going into a residence and searching for illegally possessed weapons, unless they have some basis that the person who resides there is a prohibited person, that the weapons are stolen. What they are is they're looking for weapons, period. Thank you, Mr. Shapiro. Thank you. Your Honors, may it please the Court, Randall Crum on behalf of the government. I think I'd like to start where the Court was discussing just now about the alleged discrepancy between the nature of the search terms and the probable cause established or alleged in the warrant affidavit because that was clearly what troubled the district court the most in this case was the feeling. That's what led it to sort of revise its initial belief that, in fact, there was probable cause and to think that perhaps there wasn't. And I think in the government's view, the first point, and Your Honor has hinted at this, is that the discrepancy is in some sense perhaps more illusory than real. And to the extent there is one, it's not clear how it advantages or advantaged the government in any way. The allegations were of, as I think is conceded, related to illegal use of firearms. The search terms did talk about illegally possessed firearms. We argue in our brief that that's not necessarily inconsistent or in all cases inconsistent since one of the crimes that the officer could have been thinking of is illegal possession of firearms in commission of a felony. There's nothing in any of the warrant papers that indicates that Ness was a proscribed person or there was any other basis for thinking that whatever weapons were possessed were illegal. If the warrant papers had described a sawed-off shotgun or some type of impediment of the defendant of Ness that prevented him from owning or possessing weapons, but it didn't. That's right. And the government has not argued that there was such evidence available in the affidavit that established that connection, that he was a prohibited person or that the weapons were themselves of a kind that are proscribed. So what this leads me to, Mr. Cromb, is wondering what probable cause finding the magistrate made. If we take this warrant literally and the magistrate made a probable cause finding as to illegal possession of weapons, if that's the crime, then it's unsupported because an element of it is not contained anywhere in the warrant papers. But there's nothing concrete that indicates that the magistrate thought that there was probable cause to search for evidence of some other crime. Well, that's where the government disagrees. And we point out at some length in our briefs that the application was not simply the affidavit. It was the affidavit and the warrant application form, which has boxes in which the affiant can check what probable cause he's alleging is present. Here, three were checked, illegal possession, evidence of items that were illegally used, and evidence of crime. So three different types of probable cause were alleged by the way that the form was spilled out. Then again, you do have the question of – Which box? I mean, there's the illegal possession or concealed. And as Judge Selle just pointed out, there's no evidence of one of the elements of that. So which other box are you relying on? Just the general catch-all that it's evidence of a crime? Is intended for use or has been used as a means of committing a crime is one of the checked boxes. It's the first one. So I think the point was, and that's where we argue that there is some facial overbreath because to the extent those three same boxes were checked in the form that was signed by the warrant itself, which was signed by the magistrate. So the suggestion is that we alleged, or the officer alleged, and the magistrate found all three. With regard to Judge Selle's point, we're not arguing that there was in the affidavit, in the four corners of the affidavit, evidence to support the one that relates to illegal possession. In that sense, it was overbroad. But the remedy there would be to simply say that to the extent items were seized pursuant to that allegation, they would have to be excluded. In one sense, one could say that there is something in the description of items to be seized that would be that. It's in other financial documents relating to transactions and illegal weapons. Arguably, that doesn't apply if the weapons are not themselves illegal. But there's no allegation that that was a relevant search term here. Staying with this point, though, do you agree if the magistrate had read the affidavit and found that there was probable cause for the first box checked is intended for use  then why would he have written an affidavit that authorized the search only for any and all illegally possessed weapons? Well, again, I think, again, if you can take the search term as part of the broader whole, which is the form itself, the warrant itself recites the same boxes, the same three checked boxes. So the magistrate's warrant approval checks the same three boxes that were checked in the application. So you can't say that the magistrate only found probable cause with respect to one or the other. What the concern was, I think, for the district court, is that the search term appears to take a narrower view than the checked boxes. So essentially there's an internal inconsistency with respect to both the form and the warrants where you have boxes reflecting several different forms of probable cause but a search that appears geared to one of them or more to one than the others. In that respect, Judge Prado, as you said, it seems, if anything, too narrow because it is relating to one of the items that the checked boxes would suggest there was a broader range of possible criminal activity that the magistrate found probable cause of. So is the idea that a reasonable officer wouldn't have known that this inconsistency rendered the warrant invalid? Right. Well, when you get to good faith, I think that's where you're looking at. It's not, in our view, again, you're talking about an internal consistency rather than a glaring omission. You have evidence supporting probable cause, in our view, not sufficient evidence to support probable cause of the crimes of illegal use. You have a warrant that appears to allow a search for that but then is written in terms that focus on illegal possession that an officer would not immediately see the disconnect. And there we go to the cases Cordario-Rosario cited and a couple of others cited in the brief that suggest sort of this dramatic disconnect. The cases cited are all cases in which there was evidence of molestation of a child. A search was performed of computers based on child pornography and the courts found that there was just too great a disconnect, that any officer would know that the mere fact that a physical person was harmed in one location doesn't let you search for a computer. Well, you don't have in those cases a probable cause finding with respect to the possession of pornography. Right, but you don't, but you also, with respect to, again, I switched gears understanding your question to be the question of good faith. The reason it couldn't be relied on good faith is that any officer would know that one is not like the other, that these are apples and oranges, that you can't get from one to the other. And what I've been arguing is the two are actually sort of overlapping here. No, but what I'm saying is in those cases, there wasn't any probable cause finding with respect to the possession of pornography. Yes. There was only a probable cause finding with respect to molestation. Right. Whereas here, there's a probable cause finding with respect to illegal use.  Well, there is a probable cause finding with respect to illegal use, and in fact there's a probable cause finding with respect to illegal possession, but we're not arguing that that necessarily is backed up by the affidavit. The point, when you turn to the question of what a regional officer could read from it, though, is whether any inconsistency would have been so glaring as to make them consider that the warrant was simply fully invalid rather than simply that it might have been inartfully worded or inconsistently phrased. That, I think under Haring, is clearly not enough to render a warrant outside of the good faith exception where you're required to have essentially intentional, reckless, or grossly negligent behavior affecting Fourth Amendment rights. One point on this I didn't make in the brief but worth noting is that there was a request for a Franks hearing alleging intentional or reckless omissions from the affidavit. That was denied and hasn't been appealed, and that's relevant to the question of the first two things that are mentioned in Haring that could support finding there wasn't good faith really aren't applicable here because those were found not to be the case and that's not been appealed. And I don't think this is merely an inconsistency in wording or perhaps imprecision or whatever, sloppy drafting on behalf of the, in this case, between illegal use and illegal possession, is the kind of culpable conduct that would require suppression. So I think that's why once you get to good faith, whatever inconsistency there is doesn't defeat the good faith of a reasonable officer relying on the warrant. Well, what about the lack of, let's go back to Mr. Shapiro's first argument, what about the, or his second argument, what about the lack of specificity regarding the confidential informants? There was no description of the gun and yet the affidavit allows a search for, I was going to say any guns, but actually only any illegally possessed guns. Well, with respect to the question of sort of reliability or whether the CI1 are taken together, I think there is enough here to find that the CI1 was reliable and because of the sort of mutual corroboration, which is the evidence of CI1 and CI2, to find that CI2 is more recent. What's the mutual corroboration with CI2? I mean, we know nothing about his reliability. We only know that some police officer reported to the affiant that CI2 had told him something. We know nothing about CI2's background. He doesn't tell us anything about the incident described by CI1. Right, but I think there's three sort of points in which they dovetail pretty exactly and I think it's enough to make it part of the totality of the circumstances that are considered. First, there's the location. One was the person's residence has been identified by CI1 and the CI2 independently is saying that I saw a person engaging in activity in the vicinity of that residence. Second, the nature of the activity, which is violence or threats involving a firearm. That's central to CI1's statement and that's what happens. They're not one strikes the other, merely points it at another person, but those are very similar offenses and they are enough to say, just as if there had been reports of a drug dealing by one and another one saying he dealt drugs on another occasion, we wouldn't say that those are so different that they aren't mutually corroborative. And then there is a description of the person, including his wearing of glasses, which is at least somewhat of a distinguishing feature. So you have a location, description of a person, nature of the activity. Again, after Illinois v. Gates, it's a totality of the circumstances test and the question is whether can it be considered at all and the government's view is corroborated enough when you have CI1's more clearly verified or supported testimony to make it part of what's considered and to bring up to date essentially the threat that conceitedly with respect to CI1 is not positioned in time. So we don't know when the striking incident happened, but we know that the other incident in the same vicinity by a person who looked similar happened very recently. Could I ask a question about the Nugent testimony? Yes. Which is in the brief but wasn't mentioned in the oral argument. It seems to me a bit troubling under the recent Jimenez case because it seems as though the ruling here was not conditional. It was that if the defense elected called Nugent, he could be impeached by or cross-examined with respect to these recordings of the conversations between the defendant and his girlfriend. And assuming that that was improper ruling, is that preserved? And Jimenez seems to suggest that even though Nugent wasn't in fact called as a witness, and that under Leon that ordinarily might suggest that the issue wasn't preserved, that Jimenez now says, well, if the ruling was unconditional, the failure to call the witness doesn't bar raising the thing on appeal. What's your answer to that? Well, I think there's a bit of a, some of it really has to do with the court's different uses of the word unconditional. The use of conditional in Luce was conditional in the sense of conditioned on the happening of a future event, which is if a witness testifies, certain evidence will come in. And most of this court's cases, Griffin, Nivica, Goldman, apply it in that circumstance where there's a condition that's actually a triggering event. And those cases have all held that if the triggering event doesn't occur, the person does not testify, that's a waiver. Well, that seems to have been true in Jimenez also, right? Well, no, it wasn't. And I think actually the reason that case is very important because what the court pointed out is it started out conditional. Because what was originally required, the district court required, is that they simply provide certain information to the defendant's expert. And then they would see what would happen, what the expert would do. But as the court pointed out, it became wholly unconditional because the court ultimately said not only do you have to turn over the information to the expert, but I expect he'll recuse himself once he gets it because it's contrary to his testimony. And if he doesn't, I'll preclude him anyway. So in the end, the final ruling was essentially a straight-up precluding of an expert, and that is always going to be appealable as long as it's been objected to. It started out having sort of a loose-like shape, but it didn't wind up that way. And the court was careful to point that out, that it wound up being a much more essentially unconditional ruling. And this didn't. Now, I understand that certainly in certain respects it differs from loose in the sense that it came closer in time and it was perhaps less unequivocal. I mean, the court said this is what is likely to happen. But what was important in loose was notwithstanding whatever anybody may say about what they're planning to do, these situations are always fraught with the possibility of change. And that was true in loose. We don't know what the witness will ultimately say. We don't know if after they testify the other party will actually take advantage of the conditional ruling and act on it, enter the impeachment, in this case offer the rebuttal. And we don't know if the court might actually change its mind, which it is free to do, if the testimony comes in very differently than expected. Interestingly, loose pointed out that the existence of a proffer doesn't defeat that problem. It's still inherently speculative at every step. And this court acknowledged that in Griffin as well. I think that this really is distinguishable from the circumstances that your Honor is discussing. Well, in many ways, I think, if I can just finish my response to that point, I mean, it was just also worth noting that it was talking about Homecrest and not loose itself. And Homecrest was also distinguishable from loose in the sense that it was a case in which the defendant didn't, the party didn't take advantage of a court procedure for entering evidence, not a conditional ruling conditioned on an action by the other party. So it's also, in that sense, off the main line of the loose cases we cite. Thank you.